REEDER v. CARTER

[226 N.C. App. 270 (2013)]

CRYSTAL REEDER, Plaintiff
v.
BRIAN D. CARTER, Defendant

No. COA12-1084

Filed 2 April 2013

**Specific Performance—settlement agreement—burden to prove requirements**

The trial court did not err in a divorce case by denying plaintiff wife's claim for specific performance. The parties' settlement agreement did not extinguish plaintiff's burden to prove the requirements for specific performance.

Appeal by plaintiff from orders entered 20 February 2012 and 24 February 2012 by Judge Robert M. Wilkins in Randolph County District Court. Heard in the Court of Appeals 30 January 2013.

*Bell and Browne, P.A., by Charles T. Browne, for plaintiff-appellant.*

*No brief was submitted for defendant-appellee.*

HUNTER, JR., Robert N., Judge.

Crystal Y. Reeder ("Plaintiff") appeals from orders entered 20 February 2012 and 24 February 2012 in Randolph County District Court. The 20 February 2012 order: (i) denied her motion for judgment notwithstanding the verdict; (ii) denied her motion to include specific findings of fact in the trial court's order; and (iii) denied her motion for a new trial. The 24 February 2012 order: (i) denied her claim for specific performance; (ii) granted her claims for damages for unpaid child support, loan payment reimbursement, and attorney's fees; and (iii) denied her claim for unpaid mortgage payments. Upon review, we affirm.

## I. Facts & Procedural History

Plaintiff married Brian David Carter ("Defendant") on 31 December 2002. The couple has two minor children born during the marriage. Plaintiff and Defendant separated on 1 June 2008 and divorced on 5 January 2010.

On 15 September 2009, Plaintiff and Defendant executed a separation agreement and property settlement (the "Separation Agreement").

REEDER v. CARTER

[226 N.C. App. 270 (2013)]

The Separation Agreement gave Plaintiff custody of the two children. Additionally, it required Defendant to pay: (i) $1,200 per month in child support, starting on 1 October 2009; (ii) the taxes, insurance and monthly mortgage payments for the couple's former residence; and (iii) a $56,000 debt owed to Robert Ferguson, Inc. (the "Ferguson Debt"). The Separation Agreement specified that Plaintiff would pay any other extraneous household expenses. It also contained a provision stating:

> [e]ither party shall have the right to compel the performance of provisions of this agreement by suing for specific performance in the Courts where jurisdiction of the parties and subject matter exists. Both parties acknowledge that neither party has a plain, speedy, or adequate legal remedy to compel compliance with the provisions of this agreement; that this agreement is fair and equitable to both parties and that an order of specific performance enforceable by contempt is an appropriate remedy for a breach by either party.

Nothing in the record indicates the Separation Agreement was incorporated into the 5 January 2010 divorce decree.

On 22 December 2010, Plaintiff filed a complaint in Randolph County District Court alleging Defendant breached the Separation Agreement. Specifically, she contended Defendant had failed to pay: (i) $23,000 in mortgage payments;[1] (ii) $12,000 in child support;[2] and (iii) $56,000 for the Ferguson Debt.[3] The complaint sought: (i) specific performance; (ii) damages of $23,000 for the mortgage payments; (iii) damages for all child support arrearages; and (iv) attorney's fees. Defendant did not file an answer.

The case first came on for hearing during the 13 June 2011 Session of Randolph County District Court's Family Court Division. During

---

1. In the complaint, Plaintiff alleged she paid $23,000 in mortgage payments to avoid foreclosure. Plaintiff later admitted at a hearing that Defendant had actually paid all required monthly mortgage payments subsequent to the Separation Agreement's execution; she clarified that her complaint referenced Defendant's alleged failure to pay mortgage payments for two years prior to the Separation Agreement. Plaintiff further explained that she paid the $23,000 to avoid foreclosure in June 2009, three months prior to the Separation Agreement's execution.

2. Plaintiff alleged Defendant had only paid a total of $2,250 in child support.

3. Plaintiff alleged Defendant had not paid any portion of the Ferguson Debt. Plaintiff and Defendant received notice of default in December 2010. However, Mr. Ferguson only filed a lawsuit against Plaintiff. Plaintiff settled the dispute for $20,000 (an initial $4,000 payment followed by zero-interest monthly installments of $333.33).

the hearing, Plaintiff admitted that Defendant had paid her household expenses despite her obligation under the Separation Agreement. She also acknowledged that Defendant had recently filed for bankruptcy.

On 3 August 2011, the trial court e-mailed both parties with its proposed ruling. With regard to specific performance, it stated Plaintiff had the burden of proving: (i) the remedy at law is inadequate; (ii) the obligee has performed her obligation; and (iii) the obligor has the ability to perform. Based on these requirements, the trial court indicated it would deny Plaintiff's claim for specific performance. It also asked Defendant's counsel to draft the corresponding order. On 22 August 2011, Defendant's counsel submitted a draft order, but Plaintiff objected.

On 24 August 2011, Plaintiff filed: (i) a motion for judgment notwithstanding the verdict (N.C. R. Civ. P. 50(b)); (ii) a motion to include certain findings of fact in the final order (N.C. R. Civ. P. 52); and (iii) a motion for a new trial (N.C. R. Civ. P. 59(a)(8) and 59(a)(9)).[4] In her Rule 50(b) motion, Plaintiff also referenced the trial court's denial of her motion for directed verdict; however, Plaintiff never moved for a directed verdict at the 13 June 2011 hearing. Defendant filed a response on 19 October 2011. The trial court held a motion hearing on 1 November 2011.

On 20 February 2012, the trial court denied Plaintiff's motions. Specifically, it determined the motions for (i) specific findings of fact (N.C. R. Civ. P. 52(b)) and (ii) new trial (N.C. R. Civ. P. 59) were premature because the trial court had not yet entered an order or judgment. The trial court's order further described how Rule 50(b) was the improper method to test evidentiary sufficiency in bench trials; instead, Plaintiff should have sought involuntary dismissal under North Carolina Rule of Civil Procedure 41(b).

On 24 February 2012, the trial court issued a final order: (i) denying Plaintiff's claim for specific performance; (ii) granting Plaintiff damages of $22,950 for unpaid child support; (iii) granting Plaintiff damages of $4,333.33 for Defendant's failure to pay the Ferguson Debt; (iv)

---

4. North Carolina Rule of Civil Procedure 59(a)(8) allows a new trial for "[e]rror in law occurring at the trial and objected to by the party making the motion." N.C. R. Civ. P. 59(a)(8). North Carolina Rule of Civil Procedure 59(a)(9) allows a new trial for "[a]ny other reason heretofore recognized as grounds for new trial." N.C. R. Civ. P. 59(a)(9).

Plaintiff's motion provides the following reasons for new trial: (i) Defendant filed no answer; (ii) Defendant filed no request to file an answer after the deadline had passed; (iii) the allegations in Plaintiff's complaint should have been deemed admitted (N.C. R. Civ. P. 8(d)); (iv) Plaintiff objected to Defendant's contesting the allegations of Plaintiff's complaint; and (v) the trial court overlooked certain controlling precedent.

granting Plaintiff attorney's fees of $832.50; and (v) denying and dismissing Plaintiff's claim of $23,000 for unpaid mortgage payments.

On 2 March 2012, Plaintiff again filed a motion to: (i) set aside the trial court's 20 February 2012 denial of her previous motions (N.C. R. Civ. P. 60(b)); and (ii) grant the requests in her 24 August 2011 motions (N.C. R. Civ. P. 52(b) and 59). On 20 March 2012, while Plaintiff's 2 March 2012 motions were pending, she filed timely written notice of appeal of the trial court's 20 February 2012 and 24 February 2012 orders.

## II. Jurisdiction & Standard of Review

### A. Jurisdiction

This Court has jurisdiction to hear the instant case pursuant to N.C. Gen. Stat. § 7A-27(c) (2011). Additionally, our jurisdiction is not affected by the pending 2 March 2011 motions under North Carolina Rules of Civil Procedure 52(b), 59, and 60.

According to our Rules of Appellate Procedure, a party must file and serve notice of appeal "within thirty days after entry of judgment." N.C. R. App. P. 3(c)(1). Additionally,

> if a timely motion is made by any party for relief under Rules 50(b), 52(b) or 59 of the Rules of Civil Procedure, the thirty day period for taking appeal is tolled as to all parties until entry of an order disposing of the motion and then runs as to each party from the date of entry of the order or its untimely service upon the party.

N.C. R. App. P. 3(c)(3). Thus, although "[m]otions entered pursuant to Rule 60 do not toll the time for filing a notice of appeal," *Wallis v. Cambron*, 194 N.C. App. 190, 193, 670 S.E.2d 239, 241 (2008), Plaintiff's Rule 52(b) and Rule 59 motions do toll the time for appeal. N.C. R. App. P. 3(c)(3). However, Plaintiff may still appeal the 24 February 2012 final order within thirty days of its filing. *See generally Lovallo v. Sabato*, __ N.C. App. __, 715 S.E.2d 909 (2011).

In *Lovallo*, a defendant appealed a final order despite pending Rule 52(b), 59, and 60 motions. *Id.* at __, 715 S.E.2d at 910. There, the defendant appealed more than thirty days after the final order, but before the trial court decided the Rule 52(b), 59, and 60 motions. *Id.* In *Lovallo*, we held the defendant did not file a timely appeal. *Id.* at __, 715 S.E.2d at 912. We further determined defendant could have pursued two alternatives for timely appeal: (i) the defendant could have appealed the final order within thirty days of its filing; or (ii) the defendant could have

allowed the trial court to decide the Rule 52(b) and 59 motions and then appeal both the final order and the motions rulings. *Id.* at __, 715 S.E.2d at 911–12. In the instant case, Plaintiff pursued the first route offered in *Lovallo* by timely appealing the 24 February 2012 final order within thirty days of its filing.[5]

### B. Standard of Review

"In reviewing a trial judge's findings of fact, we are 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.' " *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)); *see also Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) (" '[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary.' " (quoting *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 100–01, 655 S.E.2d 362, 369 (2008))(alteration in original)).

"Conclusions of law are reviewed de novo and are subject to full review." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011); *see also Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004) ("Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal."). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Williams*, 362 N.C. at 632–33, 669 S.E.2d at 294 (quoting *In re Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

### III. Analysis

On appeal, Plaintiff argues the trial court erred by denying her claim for specific performance. Upon review, we affirm the trial court's order.

In North Carolina, "[a] marital separation agreement is generally subject to the same rules of law with respect to its enforcement as any other contract." *Moore v. Moore*, 297 N.C. 14, 16, 252 S.E.2d 735, 737

---

5. In her notice of appeal, Plaintiff appealed both the trial court's 20 February 2012 and 24 February 2012 orders. However, Plaintiff's only argument in her appellate brief is that the trial court erred by denying her specific performance claim in its 24 February 2012 order. As such, we only consider that argument. *See Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358 (2005) ("It is not the duty of this Court to supplement an appellant's brief with . . . arguments not contained therein.")

(1979), *overruled on other grounds by Marks v. Marks*, 316 N.C. 447, 342 S.E.2d 859 (1986). As such, "a separation agreement not incorporated into a final divorce decree . . . may be enforced through the equitable remedy of specific performance." *Edwards v. Edwards*, 102 N.C. App. 706, 708, 403 S.E.2d 530, 531 (1991).

To receive specific performance, "the law requires the moving party to prove that [(i)] the remedy at law is inadequate, [(ii)] the obligor can perform, and [(iii)] the obligee has performed [her] obligations." 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 14.35 (5th ed. 2002); *see also Cavenaugh v. Cavenaugh*, 317 N.C. 652, 656–57, 347 S.E.2d 19, 22 (1986) ("Specific performance is available to a party only if that party has alleged and proven that he has performed his obligations under the contract and that his remedy at law is inadequate."); *Condellone v. Condellone*, 129 N.C. App. 675, 682, 501 S.E.2d 690, 695 (1998) ("As a general proposition, . . . courts may not order specific performance where it does not appear that defendant can perform." (quotation marks and citations omitted). We now elaborate on each of these requirements.

First, the movant must prove the legal remedy is inadequate. In *Moore*, our Supreme Court clarified that:

> [a]n adequate remedy is not a partial remedy. It is a full and complete remedy, and one that is accommodated to the wrong which is to be redressed by it. *It is not enough that there is some remedy at law; it must be as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.*

*Moore*, 297 N.C. at 16, 252 S.E.2d at 738 (quotation marks and citation omitted). For separation agreements, *Moore* established that damages are usually an inadequate remedy because:

> [t]he plaintiff must wait until payments have become due and the obligor has failed to comply. Plaintiff must then file suit for the amount of accrued arrearage, reduce her claim to judgment, and, if the defendant fails to satisfy it, secure satisfaction by execution. As is so often the case, when the defendant persists in his refusal to comply, the plaintiff must resort to this remedy repeatedly to secure her rights under the agreement as the payments become due and the defendant fails to comply. The expense and delay involved in this remedy at law is evident.

*Id.* at 17, 252 S.E.2d at 738; *see also Condellone*, 129 N.C. App. at 682, 501 S.E.2d at 695 ("A plaintiff who relies on damages to compensate for the breach of a separation agreement which has not been incorporated into a court order generally does not have an adequate remedy at law."). In this context, even one missed payment can indicate the remedy at law is inadequate. *See Stewart v. Stewart*, 61 N.C. App. 112, 117, 300 S.E.2d 263, 266 (1983).

Second, the movant must prove the obligor has the ability to perform. To meet this burden, the movant need not necessarily present direct evidence of the obligee's current income. For instance, the movant can meet her burden by showing the obligee has depressed his income to avoid payment. *See Condellone*, 129 N.C. App. at 683, 501 S.E.2d at 696. Additionally, if the obligor "has offered evidence tending to show that he is unable to fulfill his obligation under a separation agreement[,] . . . the trial judge must make findings of fact concerning the defendant's ability to carry out the terms of the agreement before ordering specific performance." *Cavenaugh*, 317 N.C. at 657, 347 S.E.2d at 23.

Third, the movant must prove she has not breached the terms of the separation agreement. Still, general contract principles recognize that immaterial breaches do not eliminate the possibility of specific performance. *See Restatement (Second) of Contracts* § 369 (1981) ("[T]he fact that a party has committed a minor breach, one not serious enough to discharge the other party's remaining duties, does not preclude specific performance or an injunction.") Nonetheless, "[t]he party seeking relief may be required to cure the breach as a condition of the decree . . . or may be held accountable for damages caused by [her] breach, either through a payment of money to the other party or by an abatement in the price that the other party is compelled to pay." *Id.*

In the present case, Plaintiff argues the trial court erred by denying her claim for specific performance. Specifically, she contends: (i) the parties agreed to specific performance in the Settlement Agreement; (ii) Plaintiff does not have the burden of proving Defendant's ability to perform; and (iii) Defendant admitted his ability to perform by failing to respond to Plaintiff's complaint. We disagree.

## A. Contractual Specific Performance Clause

Plaintiff first argues that the Settlement Agreement expressly requires specific performance upon a party's breach. Upon review, we determine the Settlement Agreement does not extinguish Plaintiff's burden to prove the requirements for specific performance.

The pertinent language in the Settlement Agreement states:

18. **BREACH.** Either party shall have the right to compel the performance of provisions of this agreement by suing for specific performance in the Courts where jurisdiction of the parties and subject matter exists. Both parties acknowledge that neither party has a plain, speedy, or adequate legal remedy to compel compliance with the provisions of this agreement; that this agreement is fair and equitable to both parties and that an order of specific performance enforceable by contempt is an appropriate remedy for a breach by either party.

Upon review, we find no North Carolina precedent regarding the enforceability of contractual specific performance clauses in this context.[6] However, in analogous circumstances our Supreme Court has held that parties may not contract around an established legal standard. See Pinnix v. Toomey, 242 N.C. 358, 363, 87 S.E.2d 893, 898 (1955) (holding that parties may not contractually create a new standard of care for establishing negligence).

Additionally, numerous other jurisdictions have held that while contractual specific performance clauses may guide a trial court's equitable determinations, they are not binding. See, e.g., Kakaes v. George Washington Univ., 790 A.2d 581, 584–85 (D.C. Ct. App. 2002); Fazzio v. Mason, 249 P.3d 390, 397 (Idaho 2011) (holding that although a "contract clause which gives a non-breaching party the right to elect the remedy of specific performance does not require a court to award specific performance," it provides "some additional support to finding that specific performance is equitable in this case, as the inclusion of the clause shows that specific performance was within contemplation of the parties"); DiGiuseppe v. Lawler, 269 S.W.3d 588, 597 (Tex. 2008) (holding that the trial court would only award specific performance based on equitable principles despite a contractual specific performance clause); Black v. American Vending Co., 238 S.E.2d 420, 421 (Ga. 1977) ("Parties cannot by contract compel a court of equity to exercise its powers in what is really an ordinary case at law."). But see Stumpf v. Richardson, 748 So. 2d 1225, 1227 (La. Ct. App. 1999) ("The contract included a

6. We note that in Martin v. Sheffer, 102 N.C. App. 802, 403 S.E.2d 555 (1991), this Court upheld a specific performance clause in a commercial contract for the sale of goods. Id. at 804, 403 S.E.2d at 556–57. However, the Martin court based its decision on provisions in North Carolina's Uniform Commercial Code, which is inapplicable in the instant case. Id. at 804, 403 S.E.2d at 556; see also N.C. Gen. Stat. § 25-2-102 (2011) (stating that the Uniform Commercial Code only applies to sale of goods).

clause for specific performance. . . . Accordingly, the purchaser's failure to comply with the contract as written entitles the sellers to specific performance."). While these cases from other jurisdictions "are not binding on the courts of this State," we consider them "instructive." *Morton Buildings, Inc. v. Tolson,* 172 N.C. App. 119, 127, 615 S.E.2d 906, 912 (2005)

Therefore, we determine the specific performance clause in the Separation Agreement does not negate Plaintiff's burden of proving the equitable requirements for specific performance.

### B. Ability to Perform

Plaintiff's next two arguments address Defendant's alleged ability to perform the terms of the Separation Agreement. Despite Plaintiff's contentions, we determine she has not met her burden of proving Defendant's ability to perform.

Plaintiff initially argues Defendant actually had the burden of proving he did not have the ability to perform. To support this proposition, Plaintiff mistakenly relies on North Carolina precedent stating that " 'when a defendant has offered evidence tending to show that he is unable to fulfill his obligations under a separation agreement or other contract the trial judge must make findings of fact concerning the defendant's ability to carry out the terms of the agreement before ordering specific performance.' " *Edwards,* 102 N.C. App. at 709, 403 S.E.2d at 532 (quoting *Cavenaugh,* 317 N.C. at 657, 347 S.E.2d at 23).

Plaintiff misapplies this statement for two reasons. First, here Defendant did not "offer[] evidence tending to show that he is unable to fulfill his obligation under [the] [S]eparation [A]greement." *Id.* In fact, Defendant did not even testify or offer any evidence at the 13 June 2011 hearing. Second, the cited language only requires the trial court to make findings of fact about ability to perform *before ordering specific performance.*[7] Here, on the other hand, the trial court denied Plaintiff's claim for specific performance. Thus, we determine Plaintiff has the burden of proving Defendant's ability to perform.

Plaintiff next argues Defendant admitted his ability to perform by failing to respond to Plaintiff's complaint. According to North Carolina Rule of Civil Procedure 8(d), "[a]verments in a pleading to which a

---

7. In her appellate brief, Plaintiff erroneously omits the word "before" from the quoted language in *Edwards* and *Cavanaugh.*

responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." N.C. R. Civ. P. 8(d). Still, even though Defendant admitted Plaintiff's factual allegations by not responding to her complaint, Plaintiff's complaint did not allege facts indicating Defendant's ability to perform.

Plaintiff contends the following statements in her complaint establish Defendant's ability to perform:

> 9. The defendant has failed and refused to abide by the terms of the parties' separation agreement and property settlement and is therefore in breach of said agreement. . . .

> 10. The defendant's breach of the parties' separation agreement and property settlement has been willful and without just cause or excuse.[8]

Nonetheless, these statements fail to allege specific facts showing Defendant's ability to perform.

We acknowledge that because Plaintiff's evidentiary burden is "less burdensome than the requirement in the contempt setting," Plaintiff need not necessarily present direct evidence of Defendant's income. 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 14.35 (5th ed. 2002). Still, she must allege some specific facts indicating Defendant's ability to pay. *See Condellone*, 129 N.C. App. at 683, 501 S.E.2d at 696 (holding that although "[t]here is no credible evidence of Defendant's current income," other evidence such as tax returns, retirement plan valuations, and home value indicated ability to perform); *Quick v. Quick*, 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982) ("If the supporting spouse is deliberately depressing income or engaged in excessive spending, then capacity to earn, instead of actual income, may be the basis of the award.").

Here, Plaintiff has alleged no such facts. In fact, at the 13 June 2011 hearing, she acknowledged that Defendant had recently declared bankruptcy. Therefore, we determine she did not meet her burden of proving Defendant's ability to perform the terms of the Separation Agreement.

Consequently, we conclude the trial court did not err by denying Plaintiff's specific performance claim.

---

8. The trial court also used similar language in its 24 February 2012 order.

## IV. Conclusion

For the reasons discussed above, the trial court's order is

AFFIRMED.

Judges STEELMAN and GEER concur.