STROUD, Judge.
 

 *153
 
 Defendant appeals an order enforcing the Separation Agreement he had entered into with plaintiff. Because the trial court's findings support its conclusions regarding the enforceability of the Separation Agreement and its order requiring specific performance of Husband's alimony obligation, we affirm.
 

 *196
 
 I. Background
 

 On 21 July 2016, plaintiff-wife filed a verified complaint against defendant-husband alleging that the parties had separated in February of 2016 and had entered into a Separation and Property Settlement agreement on 4 March 2016. Wife alleged Husband had breached the Agreement by failing to timely pay his alimony obligation and that he had paid only once or twice since entry of the Agreement. On 25 January 2017, Husband answered Wife's complaint, denying the substantive
 
 *154
 
 allegations; he counterclaimed for rescission of the Agreement based upon fraud in the inducement, material breach of contract by Wife, and attorney fees. Husband alleged Wife had concealed sexual relationships and failed to disclose material assets. Husband alleged duress, unfairness, and unconscionability as to the Agreement. Husband also alleged that even if the Agreement was valid, his obligation to pay alimony was terminated by Wife's cohabitation with another man. Husband claimed Wife had breached the Agreement by her failure to return twenty items of personal property which were listed in the counterclaim.
 

 On 30 March 2017, Husband filed a motion for summary judgment. The trial court denied Husband's motion for summary judgement and heard all pending claims and counterclaims. On 19 July 2017, the trial court entered an order denying summary judgment; concluding that the Separation Agreement was enforceable, Husband had breached the Agreement, and Wife had not breached the Agreement; and ordering specific performance of Husband's alimony obligation. Husband appealed.
 

 II. Specific Performance
 

 Defendant makes three arguments regarding specific performance. Husband does not challenge the findings of fact as unsupported by the evidence, but contends that the findings of fact are not sufficient to support the trial court's conclusions of law. "The remedy of specific performance rests in the sound discretion of the trial court and is conclusive on appeal absent a showing of a palpable abuse of discretion."
 
 Lasecki v. Lasecki
 
 ,
 
 246 N.C. App. 518
 
 , 540,
 
 786 S.E.2d 286
 
 , 302 (2016) (citation, quotation marks, and brackets omitted).
 

 To receive specific performance, the law requires the moving party to prove that (i) the remedy at law is inadequate, (ii) the obligor can perform, and (iii) the obligee has performed her obligations. We now elaborate on each of these requirements.
 

 First, the movant must prove the legal remedy is inadequate. In
 
 Moore
 
 , our Supreme Court clarified that:
 

 an adequate remedy is not a partial remedy. It is a full and complete remedy, and one that is accommodated to the wrong which is to be redressed by it. It is not enough that there is some remedy at law; it must be as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.
 

 *155
 

 For separation agreements, Moore established that damages are usually an inadequate remedy
 
 because:
 

 the plaintiff must wait until payments have become due and the obligor has failed to comply. Plaintiff must then file suit for the amount of accrued arrearage, reduce her claim to judgment, and, if the defendant fails to satisfy it, secure satisfaction by execution. As is so often the case, when the defendant persists in his refusal to comply, the plaintiff must resort to this remedy repeatedly to secure her rights under the agreement as the payments become due and the defendant fails to comply. The expense and delay involved in this remedy at law is evident.
 

 In this context, even one missed payment can indicate the remedy at law is inadequate.
 

 Second, the movant must prove the obligor has the ability to perform. To meet this burden, the movant need not necessarily present direct evidence of the obligee's current income. For instance, the movant can meet her burden by showing the obligee has depressed his income to avoid payment. Additionally, if the obligor has offered evidence tending to show that he is unable to fulfill his obligation under a separation
 
 *197
 
 agreement, the trial judge must make findings of fact concerning the defendant's ability to carry out the terms of the agreement before ordering specific performance.
 

 Third, the movant must prove she has not breached the terms of the separation agreement. Still, general contract principles recognize that immaterial breaches do not eliminate the possibility of specific performance.
 

 Reeder v. Carter
 
 ,
 
 226 N.C. App. 270
 
 , 275-76,
 
 740 S.E.2d 913
 
 , 917-18 (2013) (citations, quotation marks, ellipses, and brackets omitted). Defendant challenges all prongs supporting the trial court's order of specific performance.
 

 A. Inadequate Remedy at Law
 

 Husband contends that "the remedy of damages is the only remedy available because the defendant cannot perform under the contract. Additionally, there are no findings of fact or conclusions of law that the remedy of damages is inadequate." (Original in all caps.) As noted
 
 *156
 
 above, for separation agreements, "damages are usually an inadequate remedy[.]"
 
 Id.
 
 at 275,
 
 740 S.E.2d at 918
 
 . In
 
 Stewart v. Stewart
 
 , this Court determined,
 

 The breachor's initial failure to comply establishes the inadequacy of the breachee's remedy at law
 
 . To make iteration of breach prerequisite to equitable relief would afflict the equitable remedy with the very inadequacy it was designed to amend. Given plaintiff's allegation regarding defendant's statement of intent not to comply, and defendant's failure to make a payment when due, we find no abuse of the court's discretion in ordering specific performance.
 

 61 N.C. App. 112
 
 , 117,
 
 300 S.E.2d 263
 
 , 266 (1983) (emphasis added).
 

 Here, plaintiff's evidence showed and the trial court found that Husband had failed to pay his alimony obligation multiple times. Husband cites to
 
 Reeder
 
 to argue "that there must be findings of fact to support conclusion of law on the prong of legal remedy being inadequate[;]" it appears Husband contends that the trial court must include the magic words that "the legal remedy is inadequate" in its findings. But
 
 Stewart
 
 establishes that a finding of a "failure to comply establishe[d] the inadequacy of" the remedy at law.
 

 Id.
 

 Here, the trial court made a finding that "[t]he Defendant stopped paying alimony in August of 2016" in its July 2017 order; this finding established the inadequacy of Wife's remedy at law.
 
 See
 
 id.
 

 B. Husband's Ability to Perform under the Agreement
 

 Husband also contends that "the trial court erred by failing to make any findings of fact or conclusions of law whatsoever regarding specific performance or defendant's ability to pay alimony." (Original in all caps.)
 

 As a general proposition, the equitable remedy of specific performance may not be ordered unless such relief is feasible; therefore courts may not order specific performance where it does not appear that defendant can perform. In the absence of a finding that the defendant is able to perform a separation agreement, the trial court may nonetheless order specific performance if it can find that the defendant has deliberately depressed his income or dissipated his resources.
 

 In finding that the defendant is able to perform a separation agreement, the trial court is not required to
 
 *157
 
 make a specific finding of the defendant's present ability to comply as that phrase is used in the context of civil contempt. In other words, the trial court is not required to find that the defendant possesses some amount of cash, or asset readily converted to cash prior to ordering specific performance.
 

 Condellone v. Condellone
 
 ,
 
 129 N.C. App. 675
 
 , 682-83,
 
 501 S.E.2d 690
 
 , 695-96 (1998) (citations, quotation marks, and brackets omitted).
 

 Husband is correct that the trial court did not make specific findings of fact or conclusions of law regarding his ability to specifically perform the contract by paying the alimony. There was never any question of Husband's ability to pay raised at trial and the evidence tended to show his business was
 
 *198
 
 successful and profitable. In fact, one of Husband's counterclaims - which was rejected by the trial court in finding of fact 8- was based upon his allegation that Wife had breached the "Molestation Clause" of the agreement and that she was trying to damage his business. In the Agreement, Husband received the business he established and operated, Quality Transportation and Transports. One of Husband's counterclaims was based upon his allegation that Wife had breached the agreement by harassing him and threatening to contact his customers and "ruin [his] business[.]" RP 37 Husband testified about his business, including his relationships with Foreign Cars Italia and Bentley; his business transported foreign cars for "high-end customers" and Husband believed Wife was contacting them and trying to "blackmail" him. Husband did not present any evidence of any actual financial damage to his business - although his failure to file income tax returns for nine to ten years may have made it difficult to establish anything about his business's financial status - and he did not give any reason financial reason for stopping his alimony payments in August of 2016 but rather relied upon the allegations of fault on the part of plaintiff in his defense. At the time of the hearing, Husband was still operating his business as he had done for many years. When asked how much he had paid his attorneys in this case, he replied that he wasn't sure, but he had borrowed $ 65,000, $ 40,000 of which was from a "handshake deal" with his girlfriend, and did not use all of that money for his attorney fees.
 

 Even if Wife did not present any specific evidence of Husband's income at the time of the hearing, the evidence showed he was still gainfully employed exactly as he had been for most of their marriage. And most significantly, Husband did not present any evidence of his
 
 inability
 
 to pay or even argue that he was unable to pay. Instead, Husband's entire defense relied upon trying to set aside the Agreement based on fraud or
 
 *158
 
 duress and his defense of Wife's cohabitation. Wife had the burden to present evidence that Husband had the ability to pay, which she met by the evidence noted above. Husband did not counter that evidence and did not make any
 
 argument
 
 to the trial court regarding his ability to pay or Wife's alleged failure to present sufficient evidence of his inability to pay. He has improperly raised this argument for the first time on appeal.
 
 See
 

 Lee v. Keck
 
 ,
 
 68 N.C. App. 320
 
 , 328,
 
 315 S.E.2d 323
 
 , 329 (1984) ("Even the sufficiency of the evidence cannot be raised for the first time on appeal. On appeal, defendants argue several grounds, including the sufficiency of the evidence, which were not advanced at trial. They are, therefore, not properly before this Court." (citations omitted)).
 

 While Husband and the dissent rely on
 
 Cavenaugh
 
 in support of the argument that the trial court was required to make findings of fact regarding his ability to pay, Husband omitted the intalicized portion below in his quote from the holding he cited:
 

 We hold that
 
 when a defendant has offered evidence tending to show that he is unable to fulfill his obligations under a separation agreement or other contract
 
 the trial judge must make findings of fact concerning the defendant's ability to carry out the terms of the agreement before ordering specific performance. Because the trial judge did not make such findings in this case, he could not have properly exercised his discretion in decreeing specific performance of the separation agreement and ordering payment of arrearages. Therefore, this case must be remanded for additional findings of fact on defendant's ability to pay the arrearages and to comply with the terms of the separation agreement in the future. If the trial judge finds that defendant is unable to fulfill his obligations under the agreement, specific performance of the entire agreement may not be ordered absent evidence that defendant has deliberately depressed his income or dissipated his resources. If he finds that the state of defendant's finances warrants it, the trial judge may order specific performance of all or any part of the separation agreement unless plaintiff otherwise has an adequate remedy at law.
 

 Cavenaugh v. Cavenaugh
 
 ,
 
 317 N.C. 652
 
 , 657-58,
 
 347 S.E.2d 19
 
 , 23 (1986) (emphasis added) (citations omitted). Husband did not "offer[ ] evidence tending to show that he is unable to
 
 *199
 
 fulfill his obligations under [the] separation agreement or other contract[,]"
 

 id.
 

 , nor did he make this
 
 *159
 
 argument to the trial court.
 
 See
 

 Lee
 
 ,
 
 68 N.C. App. at 328
 
 ,
 
 315 S.E.2d at 329
 
 . This argument is without merit.
 

 C. Wife's Performance under the Agreement
 

 Last, Husband argues Wife "did not perform her obligations under the contract." This argument is commingled with Husband's argument regarding material breach of contract. Husband contends "the trial court erred by finding that ... [Wife] did not materially breach the parties' separation agreement by failing to return [Husband's] one-of-a-kind Ferrari model cars and at least $ 5,400 of other personal property items[.]" (Original in all caps.) "In order for a breach of contract to be actionable it must be a material breach, one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform."
 
 Long v. Long
 
 ,
 
 160 N.C. App. 664
 
 , 668,
 
 588 S.E.2d 1
 
 , 4 (2003).
 

 The Agreement addressed the division of "Miscellaneous Tangible Property" and provided that Husband would receive his "tools, four wheeler, golf cart and washer/dryer and personal effects including his clothing." Husband was also to get such other items "as the parties mutually agree." Since the model cars are not specifically mentioned in the Agreement, Husband and Wife apparently agreed after signing the Agreement that Husband would get the cars. The "one-of-a-kind Ferrari model cars" Husband claims are worth $ 22,500 were not mentioned in the Agreement. If the cars were so important that they "defeat the purpose of the" Agreement as Husband contends, they should have been specifically listed; otherwise, Wife could have refused to allow Husband to have the cars. "[R]escission of a separation agreement requires proof of a material breach -- a substantial failure to perform."
 
 Cator v. Cator
 
 ,
 
 70 N.C. App. 719
 
 , 722-23,
 
 321 S.E.2d 36
 
 , 38 (1984). The trial court ultimately ordered Wife to return the cars to Husband but determined that she did not breach the Agreement by her failure to return them. Furthermore, the trial court correctly determined that Wife had performed her other obligations under the Agreement. Husband's argument as to Wife's material breach as a bar to her claims for specific performance and breach of contract is overruled.
 

 III. Summary Judgment
 

 Husband next contends that "the trial court the trial court erred in (a) preserving ruling until after trial on the defendant-appellant's motion for summary judgment and (b) by denying defendant's motion for summary judgment." (Original in all caps.) But denial of summary judgment is not subject to appellate review after a full evidentiary hearing:
 

 *160
 
 To grant a review of the denial of the summary judgment motion after a final judgment on the merits, however, would mean that a party who prevailed at trial after a complete presentation of evidence by both sides with cross-examination could be deprived of a favorable verdict. This would allow a verdict reached after the presentation of all the evidence to be overcome by a limited forecast of the evidence. In order to avoid such an anomalous result, we hold that the denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits.
 

 Harris v. Walden
 
 ,
 
 314 N.C. 284
 
 , 286,
 
 333 S.E.2d 254
 
 , 256 (1985).
 

 IV. Cohabitation
 

 Husband next contends the trial court erred in failing to determine Wife was cohabiting with another man. While Husband does claim to challenge the findings of facts regarding cohabitation as unsupported by the competent evidence, Husband actually focuses less on a lack of evidence and instead asks us to reweigh the evidence in his favor, which we cannot do.
 
 See
 

 Garrett v. Burris
 
 ,
 
 224 N.C. App. 32
 
 , 38,
 
 735 S.E.2d 414
 
 , 418 (2012),
 
 aff'd per curiam
 
 ,
 
 366 N.C. 551
 
 ,
 
 742 S.E.2d 803
 
 (2013) ("It is not the function of this Court to reweigh the evidence on appeal."). "Where evidence of cohabitation is conflicting, the trial court must evaluate the parties' subjective
 
 *200
 
 intent."
 
 Craddock v. Craddock
 
 ,
 
 188 N.C. App. 806
 
 , 812,
 
 656 S.E.2d 716
 
 , 720 (2008). The trial court found:
 

 10. Based upon the evidence independent of Lisa Crews and Mr. Henderson, the Court concludes they were not cohabitating pursuant to N.C.G.S. § 50-16.9(b).
 

 11. There was no evidence of joint financial obligations of a home, combining finances, pooling of resources or consistent merging of families.
 

 12. The court does not [find] that there was a dwelling together continuously and habitally.
 

 ....
 

 14. The Plaintiff took a weekend trip to Chicago to see a male friend. There was no evidence of a sexual relationship other than a statement by Mr. Henderson when he had been cast aside by Lisa Crews which the Court puts no credence in his statement.
 

 *161
 
 The trial court specifically noted the evidence it found credible and the evidence which was not credible. Husband is correct that Mr. Henderson had said he was living with Wife at one point, but the trial court put "no credence in his statement." Ultimately, the trial court made its findings on the evidence it deemed credible; those findings are supported by the evidence and we do not review the trial court's determinations of credibility.
 
 See
 

 In re C.J.H.
 
 ,
 
 240 N.C. App. 489
 
 , 493,
 
 772 S.E.2d 82
 
 , 86 (2015) ("It is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given their testimony. If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." (citations and quotation marks omitted) ). The trial court resolved any conflicts in the evidence in favor of Wife, and even if the trial court could have reached a different conclusion, the trial court's findings are supported by the evidence.
 

 Husband also contends
 

 the trial court found that "Mr. Henderson told third parties that they were living together when he was mad at Lisa Crews because they broke up, but later indicated that was a lie." (R p 157). Mere recitations of a witness's testimony are not findings of fact to support the court's conclusions of law.
 
 Schmeltzle v. Schmeltzle
 
 ,
 
 147 N.C. App. 127
 
 ,
 
 555 S.E.2d 326
 
 , 328 (2001).
 

 But Husband's argument takes this finding out of context. This finding is in a list of 15 findings addressing the issue of cohabitation. The other findings address surveillance of plaintiff's residence on several occasions and other facts relevant to the issue of cohabitation and then indicate that the trial court did not find Mr. Henderson to be credible: "Mr. Henderson and [Plaintiff] often had contradicting testimony of their own facts and made it extremely difficult for the court to r[e]ly on anything they said." Because the trial court did not find Mr. Henderson's or plaintiff's testimony to be credible, the trial court also found that it based its conclusions "upon the evidence
 
 independent of
 
 [Plaintiff] and Mr. Henderson[.]" The trial court's findings clearly resolve the factual issues and are not merely recitations of evidence. This argument is overruled.
 

 V. Conclusion
 

 For the foregoing reasons, we affirm.
 

 AFFIRMED.
 

 Judge DILLON concurs.
 

 Judge BERGER concurs in part and dissents in part in separate opinion.
 

 BERGER, Judge, concurring in part, dissenting in part in separate opinion.
 

 *162
 
 Because the trial court's order of specific performance should be vacated and the matter remanded for a new hearing, I respectfully dissent. I concur in the remainder of the majority opinion.
 

 In April, a two-day hearing was conducted in Davidson County District Court that focused on many aspects of the parties' separation agreement. The primary focus of this hearing was breach of contract and rescission
 
 *201
 
 of the separation agreement. The hearing did not address specific performance.
 

 To receive specific performance, the law requires the moving party to prove that [ (i) ] the remedy at law is inadequate, [ (ii) ] the obligor can perform, and [ (iii) ] the obligee has performed [her] obligations. 3 Suzanne Reynolds,
 
 Lee's North Carolina Family Law
 
 § 14.35 (5th ed. 2002).
 

 ....
 

 [Therefore,] the movant must prove the obligor has the ability to perform. To meet this burden, the movant need not necessarily present direct evidence of the obligee's current income.
 

 Reeder v. Carter
 
 ,
 
 226 N.C. App. 270
 
 , 275-76,
 
 740 S.E.2d 913
 
 , 917-18 (2013) (citation and quotation marks omitted).
 

 Over the course of the two-day hearing, the term specific performance was not mentioned by any party, attorney, or the trial court. In more than five hundred pages of testimony and proceedings recorded in the transcript of hearing, neither inadequate remedy at law nor ability to perform were uttered by any party, attorney, or the trial court. It is peculiar then that the majority is able to divine the necessary findings of fact to support an order of specific performance from a proceeding that, based upon the transcript, had nothing to do with specific performance.
 

 The trial court's order wholly fails to address or otherwise mention adequacy of legal remedies. More striking, however, is the complete
 
 *163
 
 absence of any mention in the record concerning Defendant's ability to perform. There is no evidence in the record to support a finding of fact that Defendant had the ability to perform and there is no finding of fact by the trial court regarding Defendant's ability to perform. While magic words may not be necessary, evidence is.
 

 The majority justifies its result by simply stating that "the evidence tended to show [Defendant's] business was successful and profitable." The majority, however, fails to support this conclusory statement with any evidence or citation to the record. The fact that someone is deemed successful in his or her employment is purely subjective. And, while technically, even a minimal profit makes a venture profitable, the majority fails to state what evidence it relied on to make such a concrete statement.
 

 Even if we assume that this was a hearing on specific performance and that there was evidence presented of Defendant's ability to perform when the parties separated, there was no evidence presented about Defendant's ability to perform at the time of the hearing.
 
 See
 

 Cavenaugh v. Cavenaugh
 
 ,
 
 317 N.C. 652
 
 , 657,
 
 347 S.E.2d 19
 
 , 23 (1986) ;
 
 Condellone v. Condellone,
 

 129 N.C. App. 675
 
 , 682-83,
 
 501 S.E.2d 690
 
 , 695-96 (1998). On this point, the majority is silent.
 

 In addition, the majority impermissibly shifts the burden on ability to perform from Plaintiff, as obligee, to Defendant, as obligor. Plaintiff here was required to produce some evidence that Defendant had the ability to perform at the time of the hearing. Plaintiff failed to present any evidence to support such a finding or conclusion.
 

 The majority acknowledges this shortcoming at trial by stating that "[t]here was never any question of Husband's ability to pay raised at trial." That is the problem with Plaintiff's claim for specific performance and the majority opinion:
 
 Plaintiff
 
 was required to "prove the obligor has the ability to perform."
 
 Reeder
 
 ,
 
 226 N.C. App. at 276
 
 ,
 
 740 S.E.2d at 918
 
 . The fact that ability to perform was not raised at the hearing runs counter to the majority's reasoning. In the absence of any evidence by the Plaintiff of Defendant's ability to perform, Defendant was not required to show inability to pay as the majority contends.
 

 However, the majority discusses evidence presented by Defendant concerning Plaintiff's efforts to damage Defendant's business interests, but concludes that "Husband did not present any evidence of actual financial damage to his business[.]" It would be interesting to see the outcome of this case if the majority applied such a critical approach Plaintiff's case in chief.